IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Betty C. McClam,                                  ) | Civil Action No. 8:07-755-TLW-BHH |
| )| |
| Plaintiff,          ) | |
| ) | |
| vs.                                      ) | **REPORT AND RECOMMENDATION** |
| )| **OF MAGISTRATE JUDGE** |
| Michael J. Astrue,                              ) | |
| Commissioner of Social Security,        ) | |
| ) | |
| Defendant.        ) | |
| _____ ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Betty C. McClam, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Disability Insurance Benefits ("DIB") under the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 55 years old as of the Administrative Law Judge's (ALJ) decision. (R. at 13, 50.)  She has a sixth grade education (R. at 56), and worked as a sewing machine operator until a layoff in January 2003.  (R. at 52, 59, 169.)  She claims she became disabled on May 23, 2003, due to congestive heart failure, arthritis, obesity, headaches, heel spurs, gastroesophageal reflux disease, high blood pressure, depression, and respiratory problems.  (R. at 51-52; Pl. Brief generally.)

The plaintiff protectively filed her application for DIB on November 15, 2004.  (R. at 28-29.)  The plaintiff's application was denied initially and upon reconsideration.  (R. at 28-

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

38.) At the plaintiff's request, an ALJ conducted a *de novo* hearing on March 10, 2006. (R. at 163-97.) On June 23,2006, the ALJ issued an unfavorable decision, finding the Plaintiff was not disabled. (R. at 13-20.) The Appeals Counsel denied Plaintiff's request for review (R. at 4-6), thereby making the ALJ's decision the Commissioner's final decision of judicial review.

The ALJ made the following findings:

1.  The claimant met the disability insured status requirements of the Act on May 23, 2003, the dat the claimant stated she became unable to work, and continues to meet them through December 31, 2007.

2.  The claimant has not engaged in substantial gainful activity since her alleged disability onset date of May 23, 2003.

3.  The medical evidence establishes that the claimant has severe obesity and arthritis, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.

4.  The claimant's statements and testimony regarding pain and other subjective symptoms with resultant limitations are not fully credible.

5.  The combination of the claimant's impairments results in the following residual functional capacity: she has the residual functional capacity to perform a full range of light work, and she does not have any non-exertional limitations that would preclude her from performing a full range of light work.

6.  The claimant's past relevant work as a sewing machine operator did not require the performance of work related activities precluded by the above limitation(s) (20 CFR § 404.1565).

7.  The claimant's combination of impairments does not prevent her from performing her past relevant work.

8.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(e)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

2

impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

3

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find various impairments "severe;" (2) failing to find the combination of all of her impairments "severe;" (3) finding that the plaintiff could perform the full range of light work; (4) failing to properly assess the plaintiff's obesity; (5) failing to address the impact of arthritis in the plaintiff's dominant hand; and (6) failing to find the plaintiff disabled under the Medical Vocational Guidelines. The Court will address each alleged error in turn.

4

## I.    Severity of Impairments

The plaintiff first contends that the ALJ failed to find her headaches, high blood pressure, gastroesophageal reflux disease ("GERD"), respiratory problems, heel spurs, depression, and congestive heart failure severe.  The ALJ considered each alleged impairment and found them non-severe.  (R. at 13-15.)

The plaintiff's burden to show a severe impairment is not an exacting one.  Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999).  In short, the "inquiry is a de minimis screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd 2004).

The Court will consider each of the plaintiff's impairments and whether evidence exists from which the ALJ should have concluded that her ability to work was impaired.  In short, while the plaintiff has produced evidence that she suffers from such impairments, she has not produced evidence that they have the effect of limiting her ability to work, either individually or in combination.

### a.    Headaches

The plaintiff has presented no evidence that her headaches have any effect on her ability to work.  She claims summarily that she "has headaches almost every day"  (Pl. Brief at 3) but has not directed the Court to any evidence of such regularity.  Likewise, without any evidentiary citation, she contends that she "has to take medication and lie down for approximately two hours before the headache will ease off" and "[t]he headaches are worse

and occur more frequently in hot weather when pollen and other irritants are present in the environment." *Id*. at 3-4. The plaintiff has identified some evidence that she has been taking 800 milligrams of Ibuprofen (presumably per day) over possibly a couple years time. (R. at 133, 144.) The plaintiff has not argued or explained how her headaches have effected her ability to work in any way. The ALJ made no error in regards to this impairment.

### b.    GERD

The plaintiff further contends that her gastroesophageal reflux disease ("GERD") is severe. A barium swallow conducted at McLeod Regional Medical Center on January 20, 2005 showed that the plaintiff has a hiatal hernia. (R. at 138.) The test also showed that the plaintiff has motility abnormalities in her esophagus. *Id*. She suffers with solid food dysphagia. The medical records show that the plaintiff's difficulty swallowing is accompanied by some pain. Additionally, she has indicated she feels as though she is choking when she swallows. (R. at 129). After eating, the plaintiff contends that she experiences upper abdominal and lower chest symptoms consistent with GERD. (R. at 133.)

In spite of this symptomology, the plaintiff has not indicated any effects on her work or activities of daily living. She has not alleged, much less demonstrated, that her GERD has "more than a minimal effect on [her] ability to work." SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014. There is no basis in the record for the ALJ to have found the impairment severe.

### c.    Depression

In regards to her depression, the plaintiff testified about feeling depressed over her inability to lose weight. (R. at 171, 189.) The plaintiff also offers that a consultative physician, Dr. Elizabeth Dickinson, noted that she had mildly "depressed facies" or sad expressions. Notwithstanding, there is no evidence that she required antidepressant medication, therapy, or any other treatment from mental health professionals, and Dr.

6

Dickinson found that she had no overt depression (R. at 145). The plaintiff has failed to meet even her minimal burden to show that her impairment in this regard is anything more than slight.

Moreover, the plaintiff has not produced any evidence suggesting that these impairments, when considered together create any restrictions on her ability to work.

### d. Hypertension, Congestive Heart Failure, Respiratory Problems, Heel Spurs

The Court agrees with the defendant that even assuming that the plaintiff's heart, lung, and foot impairments were severe in conjunction with her obesity and precluded her from being able to stand for six hours per day as is required in the full range of light work, there is no evidence that they caused functional limitations that would preclude her from at least performing the sedentary version of her past job as a sewing machine operator (as she performed it and as the ALJ concluded (R. at 20)). The plaintiff has made no argument to the contrary. Therefore, any error by the ALJ regarding classification of these impairments as non-severe would ultimately prove harmless in this case. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where ALJ erred in evaluating claimant's pain, because "he would have reached the same result notwithstanding his initial error").

## II.    Combination of Impairments

The plaintiff next complains that the ALJ failed to consider the combined effects of her non-severe and severe impairments. It is true that the ALJ is required to so consider the plaintiff's conditions *in toto*.    *See Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir.1989); *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985). The plaintiff's allegation, however, is without basis. The ALJ, even after finding the above-identified impairments, non-severe, expressly considered their possible effect in combination with her severe impairments and found the alleged limitations not credible. (R. at 18.) Moreover, as stated,

7

the plaintiff herself has not put forward evidence of how such non-severe and severe impairments have limited her ability to work. Accordingly, there is no error.

**III.    Past Relevant Work and the Plaintiff's Residual Functional Capacity**

The plaintiff next contends that the ALJ erred in finding that she could perform the full range of light work, 20 § C.F.R. 416.967(b) (lift no more than 20 lbs.; frequent lifting/carrying of 10 lbs; good deal of walking or standing; while sitting - some pushing and pulling of arm/leg controls). It is true that the ALJ so concluded. (R. at 19.) But even if that finding was in error, it was harmless. *See Mickles*, 29 F.3d at 921. Specifically, the ALJ found that the plaintiff could do her past relevant work, sewing machine operator, *as performed*. *Id*. To that end, the ALJ found that her past work as a sewing machine operator was consistent with sedentary, as opposed to light, work, 20 C.F.R. § 404.1567(a) (lift no more than 10 lbs.; occasionally lift or carry articles like docket files, ledgers, and small tools; walking and standing are required occasionally). "The [residual functional capacity] to meet the physical and mental demands of jobs a claimant has performed in the past **(either the specific job a claimant performed** or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'" SSR 82-62 (emphasis added). Moreover, a condition that was not disabling during working years and has not worsened cannot be used to prove present disability. *See Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986). It should be noted that the plaintiff did not stop working as a result of her alleged impairments. The plaintiff specifically testified that she was "laid off" for reasons unrelated to her claimed disability. (R. at 59, 169.)

In concluding that the plaintiff's past relevant work was sedentary and that she could perform it, the ALJ applied the analysis as required by SSR 82-62. *See Harris v. Secretary, Dept. of Health and Human Services*, 1989 WL 7013, at *1-2 (4th Cir. January 27, 1989); *Adams v. Barnhart*, 445 F. Supp. 2d 593, 595 (D.S.C. 2006) (awarding attorney's fee because commissioner's position on ALJ's application of SSR 82-62 was not substantially

justified).  The ALJ first made a determination as to the plaintiff's RFC. ( R. at 18-19.)  He then took testimony from the plaintiff as to the demands of the sewing machine operator job – that it required lifting bundles weighing 10 pounds and that she would sit all of the time and do only occasional bending.  (R. at 19.)  Then he made a specific finding that her RFC would permit her to perform the duties of that work, insofar as he considered it sedentary in nature.  *Id*.

Critically, the plaintiff herself testified that she could stand for 10 minutes, walk for 10 minutes, and lift 5 to 10 pounds twice in 30 minutes. (R. at 191-92.)  These abilities are at least consistent with the capacity to perform sedentary work.  *See* 20 C.F.R. § 404.1567(a).    In her brief to this Court, the plaintiff neither disputes the ALJ's characterization of her past relevant work as sedentary or her ability to perform it at that level.  Her sole argument, in this regard, is that she cannot perform the full range of light work.  Because the ALJ concluded that she could do her past relevant work, as performed at the sedentary level, it is harmless error to the extent the plaintiff cannot actually perform the full range of light work.

For all of these same reasons, the Court rejects the plaintiff's argument that the ALJ failed to consider the effects of her arthritis in her dominant hand.  The plaintiff has not produced any evidence that the arthritis in her hand was severe enough to disqualify her from the sewing machine operator position as she had previously performed it.   On February 27, 2006, Dr. Richard Rogers, the plaintiff's treating physician, found that the plaintiff had no limitations in her ability to reach, handle, feel, push, or pull. (R. at 17, 161.)  The medical evidence showed further that she had full 5/5 shoulder strength, full 5/5 grip strength bilaterally, and normal fine and gross motor dexterity other than "slight slowing" in the right hand. ( R. at 145.)  She could normally oppose her fingers to her thumbs (Tr. 145), and there is no evidence of sensory deficit in the upper extremities.  Moreover, the plaintiff, herself, testified to the fact that she could perform sedentary work  (R. at 191-92), and the evidence shows that she did not stop working for any arthritic related reasons (R. at 59,

9

169).  The ALJ had substantial evidence to conclude as he did and the plaintiff has not explained how her evidence of arthritis in her dominant hand makes the evidence relied upon by the ALJ insubstantial.   Simply because the plaintiff can arrive at a different conclusion looking at the same evidence does not mean that the ALJ was without substantial evidence to conclude as he did.   See *Blalock*, 483 F.2d at 775.

## IV.   OBESITY

The plaintiff next contends that the ALJ erred in applying SSR 02-1p in regards to her obesity, insofar as he treated as relevant her failure to lose weight at the direction of her physician.  The plaintiff argues that SSR 02-1p recognizes that the goals of treatment for obesity are modest and that treatment is typically ineffective. SSR 02-1p at 8.  Specifically, a treating sources's statement that an individual "should" lose weight or has "been advised" to get more exercise does not constitute prescribed treatment."  SSR 02-1p at 9.

The ALJ certainly noted that the plaintiff's physicians had repeatedly encouraged her to lose weight by controlling her diet and exercising.  (R. at 15, 16.)  But, the Court disagrees that the ALJ's decision to find her not disabled was either principally based on this fact or even materially so.  The ALJ specifically considered the credibility of the plaintiff's subjective complaints (R. at 18); the medical opinions of record (R. at 16-17); and all the signs, symptoms and objective findings of her various obesity-related impairments (R. at 13-19).

The ALJ emphasized that the plaintiff did not require an assistive device for walking, nor was one ever suggested by a physician.  (R. at 18.)  There existed evidence that sitting alleviated her musculoskeletal pain.  (R. at 143.)  The plaintiff breathed well enough to remain fully oxygen-saturated, and, as of September 2005, she did not take any medication for breathing problems and had only shortness of breath on exertion (R. at 143-44).

Critically, as previously discussed, the plaintiff herself testified to the ability to perform at least sedentary work.  The ALJ concluded that the job as a sewing machine operator required no more.  (R. at 19.)  These facts are not contested.  The plaintiff's

argument that the ALJ relied on her failure to lose weight as grounds to reject disability is simply not a proper characterization of the decision's reasoning.  The ALJ was far more thorough in his analysis.

The Court would note that the plaintiff's obesity appears to be a substantially serious and limiting impairment.  It is uncontested that the plaintiff is a severely obese individual.  At all relevant times, the plaintiff weighed 230 pounds and was only 5'1" tall.  According to the American Society for Bariatric Surgery, the plaintiff's BMI (Body Mass Index) was 43.457.   The plaintiff represents that BMIs of 40 or greater place an individual in Level 3 and that this level is termed "extreme obesity," representing the greatest risk of developing obesity related impairments.

Notwithstanding, the Court has no grounds to conclude that the ALJ's analysis or findings were either wrong as a matter of law or lacked substantial evidence.  The plaintiff is incorrect that the ALJ relied on her failure to follow prescribed treatment as a material bases for finding her not disabled.  He had substantial evidence to conclude that she could return to her past relevant work and the Court cannot disturb that conclusion.

## V.     MEDICAL-VOCATIONAL GUIDELINES

Lastly, the plaintiff contends that the ALJ should have found her disabled under the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 based on her age, education, work history and residual functional capacity.  The defendant rightly contends that this argument is misplaced.  The Medical-Vocational Guidelines are referenced at step five of the sequential evaluation process, only after it is determined that a claimant is unable to perform past relevant work. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a) ("The following rules reflect major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity *and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work*.") (emphasis added).  Because the ALJ

11

concluded that the plaintiff could perform her past relevant work, resort to the Guidelines was impermissible.  "If we find you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(b)(3).  The plaintiff has made no argument in response.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/Bruce Howe  Hendricks
United States Magistrate Judge

May 20, 2008
Greenville, South Carolina

12